DECISION AND JOURNAL ENTRY.
These causes were heard upon the records in the trial court. Each error assigned has been reviewed and the following disposition is made.
{¶ 1} Appellants, Richard B. ("Richard") and Desiree King ("Desiree"), have appealed from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor son in the permanent custody of Medina County Job and Family Services ("JFS"). This Court affirms.
 I {¶ 2} On April 2, 2001, the parental rights of Richard and Desiree were involuntarily terminated as to two older siblings of the child at issue in this case. This Court affirmed that determination. In reKing-Bolen (Oct. 10, 2001), 9th Dist. Nos. 3196-M, 3231-M, 3200-M, and 3201-M.
 {¶ 3} D.B. was born on September 23, 2002. Four days later, JFS sought temporary custody of D.B., alleging that the agency had reason to believe that "[t]he child will be in immediate danger from the surroundings if he remains in parent(s)' custody, and removal is necessary to prevent immediate or threatened physical or emotional harm." The trial court granted JFS emergency temporary custody.
 {¶ 4} Pursuant to a motion filed by JFS, due to the prior involuntary termination of parental rights, the trial court found that JFS was not required to make reasonable efforts "to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home[.]" R.C. 2151.419(A)(2). See R.C. 2151.419(A)(2)(e). Neither parent filed any opposition to the motion of JFS, or the trial court's March 14, 2003 order, that the reasonable efforts bypass provision would apply in this case.
 {¶ 5} JFS moved for permanent custody. The trial court held an adjudication hearing and then held a dispositional hearing immediately afterward. The trial court found D.B. to be a dependent child pursuant to R.C. 2151.04(C) and 2151.04(D). In a separate dispositional order, the trial court terminated the parental rights of Desiree and Richard and placed D.B. in the permanent custody of JFS.
 {¶ 6} Richard and Desiree timely filed separate appeals and this Court consolidated the appeals. Desiree has raised two assignments of error and Richard has raised four. This Court will consolidate and rearrange the assigned errors for ease of review.
 II Desiree's Assignment of Error Number One
"The trial court erred by committing numerous material procedural mistakes; including the allowance of hearsay evidence during adjudication, as well as the alleged permanent custody dispositional hearing; the failure to adequately bifurcate the hearings; improperly and prematurely rule as to the necessity of demonstrating reasonable efforts toward reunification using a probable cause standard of review; as well as failure to assure appellants a fair hearing as to the permanent removal of their child from their care."
 Richard's Assignment of Error Two
"The trial court erred in permitting hearsay evidence and opinion evidence based upon such hearsay."
 {¶ 7} This Court has combined these assigned errors because they raise similar issues for review. Both Desiree and Richard contend that the trial court committed reversible error in allowing JFS to present hearsay evidence throughout the adjudicatory hearing, which was impermissible. See In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,233.[1]
 {¶ 8} Most of the evidence to which Desiree and Richard raised hearsay objections consisted of testimony of two JFS social workers and the social worker at the hospital where D.B. was born. "Hearsay" is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In response to objections by Desiree and Richard, counsel for JFS and the trial court repeatedly stressed that the evidence at issue was not being offered to prove the truth of the matter, but was instead offered to explain the course of action that each of these witnesses took with D.B. and the parents. Repeated objections and extensive cross-examination on this issue made it very clear to the trial judge that these witnesses only had first-hand knowledge of certain facts and that they were only qualified to testify about those facts.
 {¶ 9} Moreover, because this hearing was held before a judge, not a jury, the court must be presumed to have "`considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" State v. Richey
(1992), 64 Ohio St.3d 353, 357-358, quoting State v. Post (1987),32 Ohio St.3d 380, 384. "The trial court is presumed to disregard hearsay and the burden is on appellant to overcome this presumption by showing that the trial court relied on hearsay in its decision." In re Brock
(Oct. 5, 1998), 12th Dist. No. CA98-03-027, citing In re Colter (Apr. 16, 1990), 3rd Dist. No. CA89-07-011. Desiree and Richard have pointed to nothing in the trial court's dispositional order to suggest that it relied on any impermissible hearsay evidence. Consequently, they have failed to demonstrate any error by the trial court. Desiree's first and Richard's second assignments of error are overruled.
 Desiree's Assignment of Error Number Two
"The trial court erred by granting immediate permanent custody of newborn, [D.B.], to [JFS], without requiring [JFS] to demonstrate the agency's use of reasonable efforts to reunify this mentally handicapped family, counter to the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.); counter to prohibitions announced in42 U.S.C. § 12182; as well as against the due process and equal protection clauses of the United States Constitution and the inalienable rights clause of the Ohio Constitution."
 Richard's Assignment of Error Number Four
"The trial court erred in awarding permanent custody to JFS because [of] the application of the reasonable efforts bypass provision of2151.419(a)(2)."
 {¶ 10} This Court will address these assignments of error together because they are also closely related. Richard and Desiree have challenged the reasonable efforts bypass provision of R.C.2151.419(A)(2)(e), contending that its application in this case violated their rights under the Ohio and United States Constitutions and under the Americans with Disabilities Act.
 {¶ 11} It is fundamental that "`[a]n appellate court will not consider any error which * * * [the complaining party] could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" In re PieperChildren (1993), 85 Ohio App.3d 318, 328, quoting State v. Glaros
(1960), 170 Ohio St. 471, paragraph one of the syllabus. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and * * * need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, syllabus.
 {¶ 12} Richard and Desiree failed to file any written opposition to the motion of JFS that asked the trial court to find that the bypass provision of R.C. 2151.419(A)(2)(e) apply in this case, nor did they file any opposition to the trial court's determination that it did. The parties also failed to raise this issue at either the dispositional or adjudicatory hearing. Consequently, this Court will not reach the merits of this challenge. Desiree's second and Richard's fourth assignments of error are overruled accordingly.
 Richard's Assignment of Error Number One
"The trial court erred when it admitted evidence relating to events subsequent to the filing of the complaint."
 {¶ 13} Richard has asserted that, in its adjudication of whether D.B. was a dependent child, the trial court was limited to facts that existed on September 27, 2002, the date that JFS filed the complaint. He has asserted that the trial court erred in admitting and considering evidence of events that occurred after September 27, 2002.
 {¶ 14} As authority for this argument, Richard cited the following sentence, taken out of context, from this Court's opinion in In re Hood
(July 3, 1991), 9th Dist. No. 14957: "R.C. 2151.23(A)(1) requires the juvenile court to decide the issue of dependency as of the date or dates specified in the complaint, and not as of any other date." Read within the context of the In re Hood opinion, however, this sentence has no application here.
 {¶ 15} The relevant issue in In re Hood was whether the child's dependency, already established at an adjudicatory hearing, must be proven again at the time of the dispositional hearing, which, in that case, was held more than three years after the adjudication of dependency. This Court held that dependency need not be reestablished at the dispositional hearing. Nothing in the In re Hood opinion even suggests that evidence of events occurring after the date or dates specified in the dependency complaint would be inadmissible at the hearing to adjudicate dependency. Consequently, this Court's decision in In reHood lends no support to Richard's argument.
 {¶ 16} Moreover, D.B. was removed from his parents' custody as a newborn, before he was ever released from the hospital, due to the prior termination of his parent's rights to his siblings and the belief by JFS that D.B. faced similar threats of abuse or neglect. JFS could not be expected to wait until something happened to this child. Due to these circumstances, the evidence of dependency would necessarily look at the environment of the home before and after D.B.'s birth, as he never actually lived in that home environment.
 {¶ 17} "Ohio courts have held that newborn infants can be dependent before they have ever been released into their parents' custody." In re Pieper Children (1993), 85 Ohio App.3d 318, 325. "The state need not subject a child to a potentially detrimental environment where a court has made a prospective finding of dependency pursuant to R.C. 2151.04. `A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child.'" Id., quoting In re Campbell (1983), 13 Ohio App.3d 34, 36.
"[A] prospective finding of dependency is appropriate where children have not been in the custody of the mother, but circumstances demonstrate that to allow the mother to have custody of her children would threaten their health and safety. The evidence allowed the court to make a finding, pursuant to R.C. 2151.04, that these children are dependent because they will be subject to abuse unless the requested relief is granted."
 {¶ 18} Consequently, the Pieper court held that the trial court could rely, in its adjudication of dependency, on events that occurred after the children were removed from their mother's custody. In re PieperChildren, 85 Ohio App.3d at 325.
 {¶ 19} Because Richard has failed to demonstrate that the trial court erred in relying on evidence of events that occurred after the date JFS filed its complaint, his first assignment of error is overruled.
 Richard's Assignment of Error Number Three
"The trial court's finding of dependency was in error because it amounted to anticipatory dependency."
 {¶ 20} Through his third assignment of error, Richard has asserted that the trial court's finding of dependency was not supported by sufficient evidence and was against the manifest weight of the evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 21} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]."Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment."Id.
 {¶ 22} The trial court found that D.B. was a dependent child pursuant to R.C. 2151.04(C) and 2151.04(D), which define a "dependent child" to include any child:
"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
"(D) To whom both of the following apply:
"(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
"(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 23} The trial court had before it evidence that two older siblings of D.B. had been adjudicated to be dependent children and the parental rights of Desiree and Richard had been permanently terminated as to those two children. The acts and circumstances that were the basis for the adjudication and ultimate removal of the older siblings included the parents' lack of childcare skills, their inability to parent their children without assistance, their use of inappropriate discipline and allowing others to inappropriately discipline the children, anger and stress management issues, the risk of sexual abuse, and the exposure of the children to unrelated adults who stayed in the home who posed financial, physical, and emotional threats to the family.
 {¶ 24} Several witnesses testified, through personal observation or direct admissions from one or both parents, that many of these problems continue to exist in the home. Two service providers testified that they talked to Desiree and Richard about the importance of taking parenting classes, yet they still had not done so. One of these witnesses testified that this couple had never cared for a newborn infant and would need help, at least sixteen hours per day, or she would have definite reservations about their ability to provide for D.B. She further testified, as did some other witnesses, that no such plan was in place. Desiree's uncle would have been willing to help but he did not get along with Richard and, when confronted with the choice of having D.B. come home and Richard leaving, Desiree chose to have Richard stay. The only helpers who had agreed to help Desiree and Richard were not available to cover sixteen hours per day and, more importantly, JFS did not approve of these helpers because they had their own prior involvement with JFS and other agencies due to problems in their own families including sexual abuse and chronic mental illness.
 {¶ 25} JFS continued to be concerned that Desiree and Richard would expose their new baby to high risk individuals and would not be able to protect him. Several witnesses testified that Richard and Desiree were continuing to allow people to stay in their home and they were being exploited, both financially and physically, by some of these individuals. Apparently, Desiree and Richard would allow people to stay with them because they had no place to stay, but then they could not get the people to leave. One individual had allegedly raped Desiree during the month after D.B. was born. Richard repeatedly admitted that he was afraid of some of the people who stayed with them. The telephone bill and cable bill were astronomical, apparently due to long-distance and pay-per-view charges incurred by some of the visitors. The parents' MRDD caseworker testified that Richard seemed to understand that he has a problem allowing people to take advantage of him, but that Desiree does not seem to even understand that allowing all of these people into her home poses a threat to the family.
 {¶ 26} The evidence further established that Richard continues to have emotional problems as well as a problem with alcohol abuse and that he has not sought treatment for either of these problems. Richard also told one witness that he has fears, as he did with the older male sibling, that he may sexually molest D.B. because Richard had been molested by his step-father.
 {¶ 27} Given the evidence before the trial court, this Court cannot say that it lost its way in concluding that D.B. is a dependent child. Richard's third assignment of error is overruled.
 III {¶ 28} The assignments of error are overruled and the judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
SLABY, P.J. and BATCHELDER, J. concur.
[1] Desiree has also raised various other arguments under this assigned error. One of her arguments is disposed of by this Court's disposition of Richard's first assignment of error. The remaining arguments will not be addressed because Desiree has failed to cite any legal authority to support them. See App.R. 16(A)(7); Loc.App.R. 7(A)(6); App.R. 12(A)(2).