DECISION AND JUDGMENT ENTRY
{¶ 1} This cause comes on appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellants, Theresa M. and Jose M., to their infant son, Melchizedek M. Because the statutory requirements found by the trial court are supported by competent, credible evidence, we affirm.
 {¶ 2} Appellants' appellate counsel has filed a "no merit" brief and a motion requesting permission to withdraw as appellate counsel. "The procedures enunciated in Anders v. California
(1967), 386 U.S. 738, are applicable to appeals involving the termination of parental rights." Morris v. Lucas County ChildrenServices Board (1989), 49 Ohio App.3d 86, syllabus. In compliance with Anders' requirements, appellate counsel has averred that, upon a careful review of the record, case law and statutory law, she has been unable to find any arguable issues for appeal. Also, appellate counsel has sent a copy of the "no merit" brief and motion to withdraw to appellants. Neither appellant has filed a brief.
 {¶ 3} Appellate counsel has not submitted a potential assignment of error. Appellate counsel has only stated, in her statement of the issues presented, a potential challenge to the manifest weight of the evidence supporting the judgment awarding permanent custody to LCCS. Anders requires an appellate court to conduct a full examination of the proceedings to determine whether an arguable issue exists for appeal or whether the case is wholly frivolous. Morris, supra at 87, citing Anders,
supra. Thus, we examine the adjudication and disposition proceedings, testimony and evidence, in order to determine whether clear and convincing evidence supports the trial court's judgment. If, following a thorough review of the record, we determine that the appeal is frivolous and wholly without merit, we may grant counsel's request to withdraw and deny the appeal. See Anders, supra.
 {¶ 4} Appellants' history with LCCS began in 2001, and resulted in the involuntary termination of their parental rights to six other children in December 2003. Their history includes extensively documented incidents of domestic violence, some occurring in front of their children, and child endangerment charges for leaving the children unsupervised. The father's history includes arrests for theft, assault, and aggravated burglary. In 2005, LCCS discovered that Theresa was receiving prenatal care at Toledo Hospital and notified hospital social workers of Theresa's history and requested notification of the baby's birth. When Melchizedek was born on July 1, 2005, hospital social workers contacted LCCS and refused to discharge the baby to Theresa. LCCS took Melchizedek into immediate custody and sought permanent custody.
 {¶ 5} R.C. 2151.419(A)(1) tasks children's services agencies with making "reasonable efforts" to prevent the removal of children from their parents' homes. When seeking to remove or to continue a removal of a child from his home, an agency has the burden of proving that reasonable efforts were made. Reasonable efforts must also be made to make it possible for a child to return home. In this matter, LCCS filed and was granted a "by-pass" order pursuant to R.C. 2151.419(A)(2)(e), because appellants had their parental rights "involuntarily terminated * * * with respect to a sibling of the child." The by-pass order excused LCCS from its duty to make "reasonable efforts" to reunite Melchizedek with appellants and allowed LCCS to immediately proceed with a goal of termination of appellants' rights and permanent adoption without providing services to appellants.
 {¶ 6} Nearly simultaneously with the by-pass order, the guardian ad-litem ("GAL") filed a report and a recommendation that LCCS be granted permanent custody of Melchizedek. The GAL based her recommendation upon appellants' extensive history of domestic violence, their inability to break patterns of instability with respect to income and housing, and the "nearly non-existent" school attendance of the older children while they were in their parents' custody due to their circumstances.
 {¶ 7} At the adjudication and disposition hearing, Jose was present, but Theresa failed to appear; service of notice was perfected upon her, but she failed to contact any caseworker or her court-appointed counsel before the hearings. Her attorney and her caseworker were unaware of her wishes with respect to disposition; her attorney remained throughout the proceedings and cross-examined witnesses on her behalf. LCCS workers testified to the services provided to appellants while making prior reasonable efforts to prevent their older children's removal from the home; the services included domestic violence counseling for both parents, drug and alcohol abuse counseling, parenting classes, housing and utilities. Testimony established that appellants still retain parental rights to two older siblings of Melchizedek, but LCCS has temporary custody and is still attempting to "stabilize" appellants so that they may return to the home. In April 2002, due to the ongoing domestic violence, a "no contact" order was issued to protect appellants' children from appellants' disputes; despite this, Jose testified to his contact with Theresa throughout her pregnancy, including accompanying her to prenatal visits. A hospital worker testified that when she spoke with Theresa after an ultrasound without Jose present, Theresa told her of domestic violence and expressed a desire to "leave [Jose] and not return." Despite the prior termination of rights to older children, the ongoing services and efforts to reunite appellants with respect to two other children, and a caseworker's numerous attempts to telephone Theresa regarding case plan staffings and court hearings, Theresa had not contacted her caseworker except by a single telephone message since February 2005, and did not make her wishes with respect to Melchizedek known.
 {¶ 8} The adjudication phase of this matter was concluded quickly with a finding of dependence, after LCCS introduced evidence that appellants had previously had their parental rights involuntarily terminated with respect to Melchizedek's siblings. We begin our review by noting that an adjudication of dependency must be supported by clear and convincing evidence. Juv.R. 29(E)(4). Clear and convincing evidence is such evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the conclusion to be drawn. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 9} We find no error in the adjudication, as Ohio courts have held that newborn infants can be dependent before they have ever been released into their parents' custody. In re PieperChildren (1993), 85 Ohio App.3d 318, 325, citing In re Bishop
(1987), 36 Ohio App.3d 123; In re Smart (1984),21 Ohio App.3d 31; In re Campbell (1983), 13 Ohio App.3d 34. Termed "prospective dependency," such a finding is allowed by R.C.2151.04(D), and is justified by the state's interest in protecting a child before it is subject to a "detrimental environment." Id. The statute requires evidence that a child is a child "[t]o whom both of the following apply:
 {¶ 10} "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 {¶ 11} "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household." R.C. 2151.04(D).
 {¶ 12} Further, "while R.C. 2151.04(D)(2) requires that the trial court base its finding of dependency, in part, on `other conditions in the household of the child,' the legislature did not limit which conditions may be considered." In re W.C., 9th Dist. No. 22356, 2005-Ohio-2968. at ¶ 18. Given Jose's admitted violations of the no-contact order with Theresa, Theresa's revelations of domestic violence while pregnant with Melchizedek, appellants' unremedied living circumstances despite extensive services, we find the adjudication of prospective dependency supported by clear and convincing evidence. We agree that "[a] juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child." In re Pieper Children, 85 Ohio App.3d at 325, citingIn re Campbell, supra, 13 Ohio App.3d at 36. For those same reasons, the court was also justified in finding Melchizedek dependent based upon the statutory condition listed in R.C.2151.04(C), since he is a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."
 {¶ 13} After the adjudicatory finding of prospective dependency, the matter proceeded immediately to disposition. Ohio courts have long held that a parent who is a suitable person has a paramount right to the custody of his or her child. Clark v.Bayer (1877), 32 Ohio St. 299, 310; In re Murray (1990),52 Ohio St.3d 155, 157. For this reason, a court, "* * * may not award custody to [a] nonparent without first making a finding of parental unsuitability * * *." In re Perales (1977),52 Ohio St.2d 89, syllabus. Such a requirement still exists, but is now statutorily defined.
 {¶ 14} R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that (1) the child, "* * * cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," and (2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C.2151.414(B). With respect to the first requirement, R.C.2151.414(E) sets forth a list of 16 predicate findings. One of those findings must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E). If a court determines that one of the predicate findings exist, then the court must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C.2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence, R.C. 2151.414(B), Inre William S. (1996), 75 Ohio St.3d 95, and will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re S et al. (1995), 102 Ohio App.3d 338,344-345; Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 15} At disposition, appellants' caseworker testified that Theresa had not visited Melchizedek since his birth, although at least one visitation was formally arranged and the caseworker made numerous attempts to contact Theresa both directly and through known family members. The caseworker had been unable to ascertain what Theresa's wishes were for Melchizedek, and Theresa was not present for disposition. According to the same caseworker, Jose had not missed a single visitation opportunity with Melchizedek, visited him regularly, and expressed a desire to keep and raise his child. When he discussed the matter of services with the caseworker, Jose declined, stating that he did not feel he needed any further services. Near the end of the dispositional hearing, Jose testified that, if his parental rights to Melchizedek were to be terminated, he wished that his sister or another family member be investigated and given preference for adoption.
 {¶ 16} Before granting a motion for permanent custody, the trial court must find clear and convincing evidence that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. Here, the trial court found that both appellants' prior loss of permanent custody of Melchizedek's siblings satisfied the predicate of R.C. 2151.414(E)(11), which requires a court to enter a finding against a child's placement with his parent if that "parent has had parental rights involuntarily terminated pursuant to this section or section2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child." Clear and convincing evidence, specifically, Jose's testimony and the prior judgment entries involuntarily terminating both appellants' parental rights to Melchizedek's siblings, supports this finding. Thus, the trial court was required to enter a finding that Melchizedek could not be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 17} In its judgment entry, the trial court also found the predicates of R.C. 2151.414(E)(4) and (14) established, which require a finding terminating parental rights and provide:
 {¶ 18} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 19} "* * *.
 {¶ 20} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect." R.C. 2151.414(E)(4) and (14).
 {¶ 21} The trial court did not specify to which parent each statutory finding applied. With respect to Theresa, clear and convincing evidence was presented that she had failed to support, visit, or communicate with Melchizedek, as she had not attempted to see him or contact her caseworker since his birth; Jose, though declining services, had spoken to his caseworker and had not missed a single scheduled visitation with Melchizedek. However, because (E)(11) was properly established, we decline to address whether the predicate finding of R.C. 2151.414(E)(14) was established; only a single predicate finding is required in order to compel a trial court to enter a finding of parental unfitness.
 {¶ 22} Based upon the foregoing, we find appellants' parental rights were terminated in accordance with Ohio's statutory system and due process requirements. Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, appellants' appellate counsel's properly determined that no meritorious appealable issue existed in this case, and this appeal is without merit and wholly frivolous. Appellants' counsel's motion to withdraw is found well-taken and is hereby granted.
 {¶ 23} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating appellants' parental rights to Melchizedek M., is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Skow, J. Parish, J. Concur.