[Cite as *In re S.H.*, 2014-Ohio-5209.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re S.H.

Court of Appeals No. OT-13-032

Trial Court No. 2133012

**<u>DECISION AND JUDGMENT</u>**

Decided: November 21, 2014

* * * * *

Michael W. Sandwisch, for appellant.

Mark Mulligan, Ottawa County Prosecuting Attorney, Emily M. Gerber,
Assistant Prosecuting Attorney, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Mother appeals judgments of the Ottawa County Court of Common Pleas,

Juvenile Division, filed on March 27, June 10, and September 10, 2013, in proceedings

brought by the state of Ohio asserting that, S.H., mother's child, is an abused, neglected,

and dependent child. The state filed suit on March 25, 2013, shortly after S.H. was born. S.H.'s father, B.H., was a party to the trial court proceedings but has not pursued appeal.

{¶ 2} In the March 27, 2013 judgment, the trial court granted temporary custody of S.H. to the Ottawa County Department of Job and Family Services, after a shelter care hearing.

{¶ 3} The case proceeded to trial in April, 2013. In the June 10, 2013 judgment, the trial court ruled that the state failed to prove by clear and convincing evidence at trial that S.H. was an abused child pursuant to R.C. 2151.031 or a neglected child pursuant to R.C. 2151.03(A)(2), and dismissed allegations in the complaint of abuse and neglect. The trial court ruled, however, that the state had proved, by clear and convincing evidence, that S.H. is a dependent child pursuant to both R.C. 2151.04(C) and 2151.04(D).

{¶ 4} The case proceeded to a disposition hearing on September 9, 2013. The parties reached an agreement on legal custody of S.H. that was approved by the court. In the September 10, 2013 judgment, the trial court ordered S.H. placed in the legal custody of the child's paternal grandmother, L.K., and ordered that L.K. be deemed the residential and legal custodian of the child.

{¶ 5} Mother filed a notice of appeal of the trial court judgments to this court. She asserts one assignment of error on appeal:

2.

**Assignment of Error**

1. The trial court erred to the prejudice of the mother of the minor child, S.H., where the state failed to prove by clear and convincing evidence that the child was a dependent child.

**Prior Abuse, Neglect and Dependency
Proceedings Concerning S.H.'s Siblings**

{¶ 7} K.H. was and M.H. is an older sibling of S.H. K.H. was born in January 2012. M.H. was his older sister. Both are children of the marriage of Mother and J.H. The facts and circumstances of the injuries and death of K.H in March 2012, are central to the state's claim that S.H. is a dependent child under either R.C 2151.04(C) or (D).

{¶ 8} Evidence of prior abuse, neglect, and dependency proceedings involving Mother's older children was admitted in evidence at trial. State's exhibit No. 9 is a composite exhibit of certified records of the Lucas County Court of Common Pleas, Juvenile Division, in proceedings brought by Lucas County Children Services concerning K.H. and M.H. An April 25, 2012 magistrate's decision of the court in the case adjudicated that K.H. was an abused and neglected child and that M.H. was a dependent child.

{¶ 9} Mother stipulated to the adjudicatory findings of abuse, neglect and dependency. As set forth in the judgment, mother was present at the adjudicatory hearing in the case on April 17, 2012, and also stipulated to findings of fact set forth in ten numbered paragraphs in the judgment.

3.

{¶ 10} The stipulated facts included a finding that K.H. suffered bi-lateral skull fractures and detached retina and that K.H. was seen by Dr. Morh, a child abuse specialist at the University of Michigan. According to the stipulated findings, Dr. Morh "diagnosed the injuries as abuse and stated they could not have been caused in the manner * * * [Mother] * * * and her paramour * * * [B.H. (S.H.'s father)] * * * described."

{¶ 11} The stipulated findings of fact also included:

5. [M.H. and B.H.] report that they were at one of his relative's home with the children. They report that the children were asleep along with other children in the home. [They] * * * report they and the other adults were in a smoking room attached to the home. [B.H.] * * * has been inconsistent with his account of what occurred to * * * [K.H.]. [B.H.] * * * has stated that he saw a 3 year old child drop * * * [K.H.] * * * and then on other accounts he reports * * * [K.H.] * * * was on the floor when he came into the room.

{¶ 12} K.H. died before the adjudicatory hearing. The judgment ordered that B.H. have no contact with M.H. and awarded legal custody of M.H. to her father, J.H. The juvenile court judgment limited Mother's contact with M.H. to supervised parenting time.

**Admissibility of Expert Witness Testimony at Trial**

{¶ 13} Under assignment of error No. 1, appellant contends that the trial court erred in failing to limit the trial testimony of the state's two medical experts, Bader J. Cassin, M.D., and Randal S. Schlievert, M.D., to matters "perceived by the expert or

4.

admitted in evidence at the hearing" as required under Evid.R. 703. Appellant contends that both experts relied on medical records of St. Vincent Hospital and the University of Michigan Children's Hospital as a basis for the expert opinion testimony and that the medical records were not admitted into evidence at trial.

{¶ 14} The state contends that the trial court limited its consideration of the testimony of both doctors to opinions based upon matters perceived by the experts and based upon matters in evidence.

{¶ 15} The admission of expert opinion testimony is a matter within the sound discretion of the trial court. *Scott v. Yates*, 71 Ohio St.3d 219, 221, 643 N.E.2d 105 (1994). Such a decision will not be reversed on appeal absent a showing of an abuse of discretion. *Id.* An abuse of discretion implies that the trial court's attitude in reaching its decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### Dr. Cassin

{¶ 16} Dr. Cassin testified that he is a physician and surgeon and licensed to practice medicine in the state of Michigan, that he is a forensic pathologist, and that his practice is limited to that specialty. He testified that forensic pathology is "a subspecialty of pathology that focuses on the nature and effects of injury."

{¶ 17} Dr. Cassin has been a board certified forensic pathologist for approximately 30 years. He is also on the faculty of the University of Michigan and teaches forensic

5.

pathology. Dr. Cassin has served at the chief medical examiner at the Washtenaw County medical examiner's office since 1995. He has performed autopsies for 35-40 years.

{¶ 18} Dr. Cassin performed the autopsy of K.H. on March 18, 2012. He testified that the autopsy disclosed two external injuries, both in the head: "one on the left side of the head and the other one was on the left forehead just above the eye brow."

{¶ 19} The internal injuries consisted of injuries "entirely to the head." The doctor testified:

> So in the head, I found a large injury on the left side of his scalp. This was a crushing injury causing hemorrhage in the scalp, bleeding into the scalp. Beneath that was a large set of fractures that radiated from the single point from the left side of his head, radiated forward, backward, slightly downward and across the top so that the extent of fracture went around to the left side, the front of the left side of his skull. They also went across to the right side of his skull and backward to the separation of bones just behind the left ear.
>
> Beneath these fractures was a large hemorrhage on the left side of the top of the brain, but an even larger hemorrhage on the right side of the top of the brain, slightly more forward than the side of the brain.
>
> Then beneath that was a very soft brain * * *, but his brain was also bruised and had blood sitting on it for eight days * * *.

6.

**{¶ 20}** Dr. Cassin also testified as to K.H.'s cause of death based upon his examination of the body at autopsy. He testified:

His death essentially can be determined as the effects of head injury. The head injuries are an impact on the left side of the head, bleeding on the surface of the brain, an extensively, severely swollen brain, permeation of the brain at the base of the skull which causes a lack of or an interruption of the stimulus to both breathe and produce a heartbeat.

**{¶ 21}** Dr. Cassin testified that he could provide a limited opinion as to the manner of death based upon his examination of the body alone. Over objection, the court allowed Dr. Cassin to testify on manner of death "based upon his examination." He testified:

So based on my examination alone, what would I say with regard to the manner of death or my considerations which would be that there is an impact of the head against a hard surface. The injury of the brain, the placement of blood clotting on the surface of the brain and the injuries to the scalp all indicate that the head has been moving with force against a fixed object, a fixed surface and thereby has received a fatal injury or an injury that ultimately became fatal because of its related circumstances, excuse me, its related effects.

**{¶ 22}** The doctor testified, however, that based upon the examination alone he would not be able to categorize the manner of death further.

7.

**{¶ 23}** Our review of the record discloses that the trial court limited its consideration of the expert witness opinion testimony of Dr. Cassin to opinions based upon matters perceived by the doctor in his examination of the remains of K.H. at autopsy and therefore complied with the requirements of Evid.R. 703:

Evid.R. 703 provides that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." The requirement of "perceived by the expert" refers to personal knowledge. See, *State v. Solomon* (1991), 59 Ohio St.3d 124, syllabus ("Where an expert bases his opinion, in whole or major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied.") *Come Sail Away Condominium Assn. v. Bd. of Commrs. of Ottawa Cty.,* 6th Dist. Ottawa No. OT-96-034, 1997 WL 195453, * 5 (Apr. 18, 1997).

**{¶ 24}** Accordingly we find appellant's contention that the doctor's opinion testimony should be excluded under Evid.R. 703 is without merit.

### Dr. Schlievert

**{¶ 25}** Dr. Schlievert testified by deposition at trial. Dr. Schlievert is the Director of the child abuse program at Mercy/St. Vincent's Hospital in Toledo and an expert in the field of child abuse and neglect. In its judgment, the trial court considered the testimony of Dr. Schlievert given in response to a hypothetical question. The state questioned the

8.

doctor as to whether the injuries sustained by K.H. could have been caused by a three-year-old picking up the baby and dropping him on the floor. Dr. Schlievert testified that it was not a reasonable or likely cause of the injuries.

{¶ 26} Appellant argues that Dr. Schlievert, in his testimony, relied on the records of Mercy/St.Vincent Hospital and the University of Michigan Hospitals that were not in evidence and that the trial court erred in considering Dr. Schlievert's testimony.

{¶ 27} The trial court addressed the issue in its judgment:

33. Dr. Schlievert was contacted by Detective Amy Harrell and was asked to review certain records pertaining to the death of * * * [K.H]. Thereafter, Dr. Schlievert reviewed medical records from Magruder Hospital, Mercy/St. Vincent's Hospital and Children's Hospital at the University of Michigan. He further reviewed the autopsy report of Dr. Bader Cassin.

34. Over Mother's continuing objection, Dr. Schlievert testified to the injuries sustained by * * * [K.H.]. From the autopsy report (that has been admitted into evidence), Dr. Schlievert noted that * * * [K.H.] * * * sustained a significant skull fracture on the left side and a smaller but still significant skull fracture on the right. Subdural hemorrhage was also evident. There was marked edema or swelling of the brain, and subarachnoid hemorrhages throughout the brain as well.

9.

35.  Upon direct examination, the State of Ohio thereafter asked Dr. Schlievert, hypothetically and based upon the doctor's training and experience with child abuse victims, whether the injuries sustained by * * * [K.H.] * * * could have been caused by a 3-year-old picking up the child and dropping him on the floor.

NOTE:  The Court will overrule Mother's objection and consider the doctor's answer in that there are facts in evidence that (1) * * * [B.H.] * * *, a party, stated to Detective Amy Harrell that he believed that the 2-year-old child dropped the baby; and (2) the injuries described were contained in the admitted autopsy report.

36.  Dr. Schlievert stated that it was not a reasonable or likely cause of the injuries.

{¶ 28} Appellant's argument is that Dr. Schlievert based his opinion in part on his review of medical records that are not in evidence; that is, records of Mercy/St. Vincent Hospital in Toledo and records of the Children's Hospital at the University of Michigan In our view, the record demonstrates that the doctor based his opinion at least in major part on the findings at autopsy as to the injuries suffered by K.H.  The autopsy report was admitted in evidence.  The description of injuries provided in the autopsy report are also consistent with the description of injuries provided by Dr. Morh, who treated K.H. at the Children's Hospital at University of Michigan.  Dr. Morh's description of injuries is also in evidence.

10.

{¶ 29} There is no claim that the Children's Hospital at the University of Michigan medical records or Mercy/St. Vincent Hospital medical records, not in evidence, were inconsistent with the autopsy results or the findings provided by Dr. Morh. We conclude under these circumstances the requirements of Evid.R. 703 were satisfied. *See Williams v. Reynolds Road Surgical Center, Ltd.,* 6th Dist. Lucas No. L-02-1144, 2004 WL 628972, *6 (Mar. 31, 2004); *Loura v. Adler,* 105 Ohio App.3d 634, 642, 663 N.E.2d 1002 (1st Dist.1995).

{¶ 30} We conclude that the trial court did not abuse its discretion by admitting into evidence the expert opinion testimony of Dr. Schlievert on whether M.H.'s injuries could have been caused by a 3-year-old child picking up M.H. and dropping him on the floor.

## Whether the State Proved by Clear and Convincing Evidence that S.H. is a Dependent Child

{¶ 31} Under assignment of error No. 1, appellant also argues that the trial erred in its judgment because the state failed to prove by clear and convincing evidence that S.H. is a dependent child. Appellant contends that the evidence in the record was insufficient to establish S.H. was a dependent child under either R.C. 2151.04 (C) or (D) and that the trial court misapplied the requirements of R.C. 2151.04(D).

{¶ 32} Detective Amy Harrell of the Ottawa County Sheriff's Office testified at trial. Many of the findings of her investigation into the injuries and death of K.H. are included in the stipulated findings of fact in the Lucas County Juvenile Court judgment with respect to abuse, neglect and dependency of K.H. and M.H.

11.

{¶ 33} At trial, Detective Harrell testified as to statements by Mother and by B.H. concerning events on March 10, 2012. Mother described how injuries to K.H. first became a concern. Mother stated that B.H. left the smoking room to check up on the children. Mother told the detective that she heard B.H. "yell, "Reese, don't." Mother stated that B.H. told her "Reese dropped the baby."

{¶ 34} Reese was the 2½ year old son of a person present at the gathering. Detective Harrell testified that Reese turned age 3 on January 19, 2012. The detective met Reese during her investigation and testified that he was three foot, two inches tall and weighed 30 pounds.

{¶ 35} Detective Harrell testified that she also spoke to B.H. concerning the incident. B.H. stated that he came to the living room area to check on the kids and saw the baby, K.H., on the floor with Reese a step or two behind him. Later B.H. told the detective that he did not see the baby on the floor initially, but later realized that the baby was on the floor with Reese standing there.

{¶ 36} B.H. also stated that as he rounded the corner from the kitchen to enter the room where the children were sleeping that "he heard an aggressive or violent thud." B.H. told Detective Harrell that he thought that Reese dropped the baby.

{¶ 37} Detective Harrell also testified to inconsistent statements by both Mother and B.H. as to their response upon discovering that K.H. was injured. According to the detective, Mother first stated that they put the baby in the car and proceeded immediately

12.

to Magruder Hospital in Port Clinton.  Later, Mother admitted that they did not go directly to the hospital.  Rather, she and B.H. picked grandmother up at her home first.

{¶ 38} Certified records of Magruder Hospital concerning the care and treatment of K.H. were admitted in evidence at trial.  The records set forth statements by B.H. as to the condition of K.H. when he found him on the floor.  According to the records, K.H. was on the floor "making gasping respirations."  The record continues: "Parents report patient made only occasional respirations while in route to the emergency room."

{¶ 39} Detective Harrell testified at trial that the grandmother lived three miles from the house on Carroll Erie Road in the opposite direction from Magruder Hospital.

{¶ 40} In the June 10, 2013 judgment, the trial court found that S.H. is a dependent child pursuant to R.C. 2151.04(C) and (D) and stated the basis of its judgment:

> Said determination is based upon (1) the acts and omissions of * * * [Mother and Father of S.H.] * * * that resulted in an adjudicatory order finding the siblings of S.H. to be abused, neglected and/or dependent; and (2) the necessity of the State to assure protection of S.H.  In addition to the above findings of fact, the Court reiterates that while in the care of * * * [Mother and S.H.'s father, B.H.] * * * sustained life-ending injuries; that * * * [Mother and S.H.'s father] left a 2-month-old baby unsupervised in the presence of a toddler; that accounts given by * * * [S.H.'s Father] * * * were inconsistent during the investigation; that the perpetrator of * * *

13.

[K.H.'s] * * * injuries has never been determined; and that * * * [Mother and S.H.'s Father} failed to seek immediate medical care for * * * [K.H.] * * *.

{¶ 41} "Ohio courts have held that newborn infants can be dependent before they have ever been released into their parents' custody." *In re Pieper Children*, 85 Ohio App.3d 318, 325, 619 N.E.2d 1059 (12th Dist.1993); *In re Melchizedek M.*, 6th Dist. Lucas No. L-05-1379, 2006-Ohio-3062, ¶ 9. We consider claimed trial court error in determining S.H. is a dependent child under R.C. 2151.04(D) first.

<strong>Requirements of R.C. 2151.04(D)</strong>

{¶ 42} One definition of a dependent child provided in R.C. 2151.04 is the definition provided in R.C. 2151.04(D). The statute provides:

> **2151.04 "Dependent child" defined**
>
> As used in this chapter, "dependent child" means any child:
>
> * * *
>
> (D) To whom both of the following apply:
>
> (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
>
> (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the

household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶ 43} R.C. 2151.04(D)(1) requires a showing that the person who "committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child" resides in the household. Mother argues that the requirements of R.C. 2151.04(D)(1) have not been met because the identity of who perpetrated the abuse of K.H. has not been determined and, therefore, proof is lacking that the person who committed the abuse resides in the household.

{¶ 44} The state does not limit the argument to adjudication that K.H. was an abused child alone. The state argues that the requirements of R.C. 2151.04(D)(1) were met because the record demonstrates several actions by Mother and B.H. formed the basis for the juvenile court adjudications that K.H. was an abused and neglected child and that M.H. was a dependent child. The state argues that state involvement is warranted to protect S.H. from harm.

{¶ 45} R.C. 2151.03 defines factors for determination whether a child is a neglected child:

> To enter a ruling that a child is neglected, the court must find at least one of the factors of R.C. 2151.03 to exist with respect to the parent/child relationship: That the parent has abandoned the child; that the parent's faults or habits results in the child suffering a lack of adequate parental

15.

care; that the parent "refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being"; that the parent refuses to provide special care necessitated by the child's mental condition; that the child suffers physical or mental injury harmful to the child's health or welfare because of an act of omission of the parent; that the parent subjected the child to out-of-home care child neglect. R.C. 2151.03(A)(1)-(7). *In re Miajanigue W.*, 6th Dist. Lucas No. L-06-1088, 2006-Ohio-6295. ¶ 24.

{¶ 46} By stipulation K.H. was adjudicated to be a neglected child. K.H. sustained life-ending injuries while under Mother's care. Mother left K.H. unsupervised in the presence of a toddler and failed to seek immediate medical care for the baby after the discovery of injury. We conclude that there was clear and convincing evidence demonstrating that Mother committed acts that were under R.C. 2151.03 (3) and (6) the basis for adjudication that K.H. was a neglected child.

{¶ 47} The second element under R.C. 2151.04(D) to establish that S.H. is a dependent child is a showing that "[b]ecause of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected" by the same "parent, guardian, custodian, or member of the household." R.C. 2151.04(D)(2).

{¶ 48} The record demonstrates that K.H. suffered violent injuries that caused his death while in the care of Mother and that the identity of the perpetrator has not been

16.

established. The evidence at trial also demonstrated that the severe injuries to K.H. would not have been caused by a three-year-old child picking up the baby and dropping him on his head to the floor, as once contended. There was evidence mother failed to properly supervise the baby. Mother failed to seek immediate medical care for the baby's injuries. Given the circumstances, we conclude that clear and convincing evidence demonstrates that placing S.H., a sibling of K.H., in the household would place S.H. in danger of neglect by Mother.

{¶ 49} We find the trial court's determination that S.H. is a dependent child under R.C. 2151.04(D) is supported by clear and convincing evidence in the record.

### R.C. 2151.04(C)

{¶ 50} R.C. 2151.04(C) defines a dependent child as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04(C) and 2151.04(D) provide alternative grounds upon which to determine that a child is a dependent child. The provisions are not mutually exclusive. *In re B.B.*, 3d Dist. Defiance No. 4-10-17, 2012-Ohio-2695, ¶ 27. "[W]here the state can show that the 'condition' or 'environment' into which a newborn baby will enter is such as to justify the state's preventing that child from entering that environment, it is clear that the state may intervene. R.C. 2151.04(C)." *In re Campbell*, 13 Ohio App.3d 34, 36, 468 N.E.2d 93 (12th Dist.1983).

{¶ 51} In our view the same facts and circumstances considered under R.C. 2151.04(D) demonstrate by clear and convincing evidence that separating S.H. from her

17.

family environment is necessary to protect the child's health, safety, and welfare and that S.H. is a dependent child pursuant to R.C. 2151.04(C).

{¶ 52} We find appellant's assignment of error No. 1 not well-taken.

{¶ 53} Justice having been afforded the party appealing, we affirm the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, and order appellant to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Stephen A. Yarbrough, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.