DECISION AND JUDGMENT ENTRY {¶ 1} Appellant, Eric H., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated his parental rights to Milyon W., born October 30, 2003.
 {¶ 2} Milyon has two siblings, Miajanique W. and Myanna W. During all relevant times, the three children resided with their mother, Mecca W. The two siblings' fathers, Mario H. and Angelo S., were also present during the termination proceedings; however, only Eric H. is a party to this appeal. We therefore focus our analysis on the facts pertaining to Milyon and appellant.
 {¶ 3} On December 2, 2005, the Lucas County Children Services Board ("LCCSB") filed a complaint in dependency and neglect for all three children and a motion for an emergency shelter care hearing. The complaint alleged that the mother had a long history of substance abuse and had participated in the Drug Court program; that the children had previously been in the temporary custody of LCCSB but that custody was returned to the mother on August 19, 2004; that LCCSB's protective supervision was terminated June 2, 2005; that the mother had again tested positive for cocaine and marijuana; that the "fathers of the children" failed to participate in case plan services; and that appellant has had no contact with Milyon.
 {¶ 4} A caseworker, Holly Magnus, filed an affidavit stating that appellant could not be found and that his place of residence could not be ascertained. Service was made by ordinary mail to his last known address and by posting as provided by R.C. 2151.29.
 {¶ 5} On December 15, 2005, a case plan was filed with the court; it stated that it was mailed to, inter alia, appellant. "Adoption" was listed as the stated goal for Milyon. Regarding services, the case plan noted, "Milyon qualifies for Early Intervention. Milyon was terminated from services through Early Intervention because of lack of follow-through by [mother]." It then called upon Milyon's current caretakers to ensure he kept all Early Intervention appointments and followed the recommendations, and stated, "Progress will be measured by parent's level of involvement in any/all identified services and activities." Appellant did not sign the case plan; a caseworker noted in the plan that appellant failed to show for the scheduled meeting on December 12, 2005.
 {¶ 6} On February 10, 2006, summonses were issued to appellant, both by publication and by regular mail at his last known address on Putnam Street in Toledo, Ohio.
 {¶ 7} On February 28, 2006, the adjudicatory hearing was held. Milyon's guardian ad litem ("GAL") filed a report and recommendations the day of the adjudications. The five page report mentions appellant once. The GAL noted, "The alleged fathers [of Miajanique and Myanna] have not shown an active interest in receiving custody of their respective daughters, and neither did [appellant] until very recently. I have information that [appellant] has seen Milyon of late, but is not following a case plan." The GAL did not list appellant as a "person contacted" for her report.
 {¶ 8} Witnesses called during the adjudication testified as follows, with respect to Milyon and appellant only. Kathleen Sheets, an Early Intervention specialist with the Lucas County Board of Mental Retardation, testified that Milyon and her sister Myanna were referred to her by LCCSB. Sheets testified that Milyon had no delays when first assessed; Milyon was referred because of a "risk for delays due to prenatal exposure to drugs and alcohol * * *." Sheets could not remember the date of the initial assessment. Sheets began working with Milyon's mother in February 2005, when Milyon began residing with her mother after having been in foster care for a year. All records from Early Intervention regarding Milyon were subpoenaed and entered into evidence. The assessment shows that Milyon's cognitive development, social and emotional behavior, fine and gross motor skills, speech and communication were all age-appropriate. Case note details by Sheets began in February 2005 and ended in December 2005, when Sheets was informed that LCCSB intended to seek permanent custody and the instant complaint and motion for permanent custody was filed.
 {¶ 9} Sheets did not reference appellant anywhere in her notes; no notes indicate an attempt to contact him. An attorney for another father asked a single question: "Were the fathers ever involved?" Sheets answered "No." Appellant's attorney did not question Sheets. This leaves ambiguous whether appellant was uninvolved by choice or whether he was unaware of Milyon's participation in Early Intervention.
 {¶ 10} Next, Holly Magnus, an assessment caseworker with LCCSB, testified that she received a referral in November 2005, "expressing the concerns for the hygiene and care of Miajanique." Upon investigation, she found the mother's home stocked with food and very clean. The hygiene concerns about Miajanique were unsubstantiated. Upon talking with the mother, Magnus learned that the mother had a history of substance abuse problems, and she asked the mother to voluntarily take a urine screen. The screen tested positive for marijuana and cocaine. In early December 2005, a family case conference was held to "determine the risk" to the children in the home. At that conference, the mother admitted using marijuana and cocaine; caseworkers decided to immediately seek temporary custody and move for permanent custody. Magnus never had any contact with appellant. Appellant's attorney did not conduct a cross-examination.
 {¶ 11} All attorneys waived closing statements, and the court orally ruled that LCCSB "met their burden of proof in finding the children to be dependent and neglected." The matter moved immediately to disposition.
 {¶ 12} For disposition, Chada Edinger, as caseworker with LCCSB, testified that LCCSB had become involved in November 2002. Edinger began working with the mother in March 2003, seven months before Milyon was born. At that time, Miajanique and Myanna were in LCCSB's temporary custody and placed in foster care. LCCSB initially became involved when the children were found unsupervised in the home, the oven was being used to warm the house, and the mother was abusing cocaine and marijuana. Mario H. was incarcerated and Angelo S. had not established paternity. In July 2003, LCCSB filed a motion for permanent custody, and the mother began detox treatment, inpatient treatment, Drug Court, then outpatient treatment and mental health services. Milyon was born while the mother was still in inpatient services; she was immediately taken into temporary custody of LCCSB, and placed in foster care. Tests given to Milyon at birth for illegal substances were negative.
 {¶ 13} After the mother had progressed through treatment and parenting classes, the children were returned to her custody in August 2004, and began living with her in January 2005.
 {¶ 14} With respect to Edinger's contact with appellant, she testified:
 {¶ 15} "The contact I had with him — he came in for a few of the office visits and met with me, and he had wanted to establish paternity also before he initiated any services. He did establish paternity. He was found to be the father. And he failed shortly after to come to any visitations and did not initiate any services. Most of the contact I had to set up that contact [sic] was with his girlfriend who would call me and ask me if he could come down and see me. It wasn't directly with him."
 {¶ 16} She did not know when appellant established paternity, only that it was sometime in 2004. Appellant did, however, attend "a few" scheduled visitations, but Edinger did not say when appellant visited or when appellant stopped visiting. She later clarified that appellant only stopped scheduled visitations with Milyon while she was at the agency; she acknowledged that appellant has "been visiting in the last couple of months," after the instant complaint was filed in December 2005, and Milyon was in relative care. As for appellant's financial support of Milyon, Edinger testified, "I can only go off of what [the mother] reported to me, and [she] reported to me that she was getting no support * * *." No evidence of a child support order for appellant was introduced.
 {¶ 17} Upon cross-examination by appellant's counsel, she acknowledged that appellant initiated the visitations, and expressed to her his interest in participating in case plan services, but he had shown "no progress" in services and stopped attending visitation. However, she acknowledged that he was never referred to services, because he did not attend the initial case plan creation meeting. After the instant complaint was filed, appellant called Edinger and asked for a case plan; Edinger said that appellant never responded after she mailed a case plan and sent "office visit letters" to his last known address. Ultimately, she opined that a grant of permanent custody to LCCSB was in the children's best interests.
 {¶ 18} When appellant testified, he asserted that his address was not the address to which LCCSB had been sending mail. He explained that the addresses which LCCSB used belonged to a woman with whom he would sometimes stay. He admitted, however, to receiving some of the mailings. He expressed an interest in participating in case plan services, but thought that with his criminal background, that he would not have a chance to gain custody. He asserted that he supported Milyon and that he had been visiting; he did not say whether he had been ordered to pay child support through an order. He did, however, say that he had five other children, with five different mothers, living in different places, and that he visited them every weekend and provided support for them. He did not testify as to any employment or current living circumstances.
 {¶ 19} Ms. Szoda, the GAL appointed for the children, testified generally as to Milyon. She made no statements about appellant. She then admitted, on cross-examination, that she had never seen appellant until the instant hearing. When asked whether she attempted to contact appellant, she replied, "Well, I called you [appellant's counsel] and I think I just got his address. But, no, I didn't. But there was no follow-up on a case plan or anything like that. But I did hear right at the last part of my investigation that he had visited." The GAL's report concluded with her recommendation that LCCSB be granted permanent custody of all three children; the sole reason given was that "[i]t doesn't appear that [the mother] can or will give up drugs for her children." After her testimony, the proceedings concluded.
 {¶ 20} On April 17, by judgment entry, the trial court found, regarding appellant, that "[n]one of the fathers of the children provide any care or support for their child." In its conclusions of law, the court found applicable R.C. 2151.414(B)(1)(d), which allows a court to grant permanent custody to the agency if it finds that it is in the best interests of the child to do so, and if it finds that the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period. The court also found that the child cannot be placed with either parent within a reasonable period of time for the reasons listed in R.C. 2151.414(E)(1), (2), (4), (10), (12), and (16).
 {¶ 21} Appellant received appointed counsel for appellate purposes, and timely appealed the judgment. He raises a single assignment of error:
 {¶ 22} "The evidence presented at the adjudication and disposition hearing, which formed the basis for the award of permanent custody to the Lucas County Children Services Board was insufficient as a matter of law."
 {¶ 23} We first address the adjudications of dependency and neglect, as the adjudications are a separate, appealable issue. In re Murray
(1990), 52 Ohio St.3d 155, 161. A trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is more onerous than a preponderance of the evidence in a civil case. It is evidence which produces "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469. We examine the record to determine whether appellee sustained its burden of producing clear and convincing evidence of dependency and/or neglect as defined by R.C. 2151.03 and 2151.04. Appellate courts should not reverse a trial court's adjudication when competent and credible evidence supports the findings of fact and conclusions of law. The trial court must determine whether the children were neglected or dependent as of the date or dates alleged in the complaint, not whether the children were neglected or dependent as of the date of the adjudicatory hearing. R.C. 2151.23(A)(1).
 {¶ 24} To enter a ruling that a child is neglected, the court must find at least one of the factors of R.C. 2151.03 to exist with respect to the parent/child relationship: That the parent has abandoned the child; that the parent's faults or habits results in the child suffering a lack of adequate parental care; that the parent "refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being"; that the parent refuses to provide special care necessitated by the child's mental condition; that the child suffers physical or mental injury harmful to the child's health or welfare because of an act of omission of the parent; that the parent subjected the child to out-of-home care child neglect. R.C. 2151.03(A)(1)-(7).
 {¶ 25} "Unlike a finding of neglect under R.C. 2151.03, which requires proof that the parents were willfully at fault in abandoning or neglecting the children or refusing to perform their parental duties, a finding of dependency under R.C. 2151.04 must be grounded on whether the children are receiving proper care and support. The focus is on the condition of the children, not the fault of the parents." In reBibb (1980), 70 Ohio App.2d 117, paragraph one of the syllabus; see, also, In re Alexander C., 164 Ohio App.3d 540, 553, 2005-Ohio-6134, ¶ 45. R.C. 2151.04 defines a dependent child and states:
 {¶ 26} "A 'dependent child' means any child:
 {¶ 27} "(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;
 {¶ 28} "(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
 {¶ 29} "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
 {¶ 30} "(D) To whom both of the following apply:
 {¶ 31} "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 {¶ 32} "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household." R.C. 2151.04.
 {¶ 33} The trial court did not specify which sections it found applicable to any of the children. A single finding of fact supports the adjudication with respect to appellant: "None of the fathers of the children provide any care or support for their child." Although appellant disputed agency workers' testimony by testifying that he did visit Milyon and that he provided what support the mother asked him to provide, his disputations do not preclude a finding that Milyon was dependent. The focus in a dependency determination is properly on Milyon's circumstances, not appellant's actions or inactions. Milyon's residence with her mother rendered her without "adequate parental care by reason of the mental or physical condition" of her mother due to her mother's drug abuse; appellant did not testify that he assisted in alleviating these circumstances for Milyon.
 {¶ 34} Appellant's testimony contradicting that of the caseworkers also does not preclude a finding that he, specifically, neglected Milyon. Statutorily, an abandoned child is per se a neglected child. R.C. 2151.03(A)(1). "[A] child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C.2151.011(C). Although caseworkers and appellant testified that he visited Milyon while she was in relative care after the filing of the instant complaint in December 2005, no testimony established whether he visited or communicated with Milyon while she was in her mother's custody from August 2004 to December 2005. Thus, the adjudications of dependency and neglect was not error.
 {¶ 35} With respect to the disposition, the trial court entered a finding, in part, pursuant to R.C. 2151.414(B)(1)(d). Also known as the "12 of 22" provision, it allows a court to grant permanent custody to an agency if it determines that a grant of permanent custody is in the child's best interests, and if it determines that the child has been in the temporary custody of a children services agency for 12 or more months of a consecutive 22 month period. For the purposes of this determination, a child is considered to have entered the temporary custody of the agency at the earlier of 1) the date the child is adjudicated neglected, dependent, or abused, or 2) the date that is 60 days after the removal of the child from home. R.C. 2151.414(B). We find this provision to be inapplicable to Milyon.
 {¶ 36} Milyon was removed from her mother at birth, on October 30, 2003. Sixty days after this date is December 29, 2003. Milyon was adjudicated dependent by a magistrate on January 14, 2004; the trial judge affirmed and journalized the decision on February 5, 2004. Therefore, the December 29, 2003 date is to be used for determining the "12 of 22." On September 13, 2004, by way of judgment entry, LCCSB's temporary custody of Milyon was terminated and legal custody returned to her mother. Milyon was in the temporary custody of LCCSB for eight months and 16 days. Thus, the "12 of 22" provision cannot be applied to Milyon, although it may have been applied only to Milyon's siblings, who entered the temporary custody of LCCSB under the prior complaint on February 19, 2003, and who were therefore in LCCSB's temporary custody for more than 12 months.
 {¶ 37} Next, we examine the record for clear and convincing evidence supporting the termination pursuant to R.C. 2151.414(D) and (E). "A termination of parental rights is the family law equivalent of the death penalty in a criminal case. The parties to such an action must be afforded every procedural and substantive protection the law allows."In re Smith (1991), 77 Ohio App.3d 1, 16. Ohio courts have long held that a parent who is a suitable person has a paramount right to the custody of his or her child. Clark v. Bayer (1877), 32 Ohio St. 299,310; In re Perales (1977), 52 Ohio St.2d 89, 97; In re Murray (1990),52 Ohio St.3d 155, 157. For this reason, a court, "* * * may not award custody to [a] nonparent without first making a finding of parental unsuitability * * *." In re Perales, supra, syllabus. Such a requirement still exists, but has been statutorily defined.
 {¶ 38} R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that 1) the child, "* * * cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," R.C. 2151.414(B)(2), and 2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B)(1). The statute sets forth a list of 16 predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E);In re William S. (1996), 75 Ohio St.3d 95, syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C.2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence, R.C. 2151.414(B), and will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re Forest S. (1995), 102 Ohio App.3d 338, 344-345; Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 39} Appellant argues that the paucity of testimony and evidence does not support any of the factors of R.C. 2151.414(E). Rather, appellant asserts that the evidence presented focused upon the mother and her failure to complete a case plan, and did not show that appellant did not or could not have successfully completed services to gain custody of Milyon.
 {¶ 40} The trial court listed in its judgment entry the factors of R.C. 2151.414(E)(1), (2), (4), (10), (12) and (16). The first factor was not applied to appellant, as Milyon was not residing with him; the trial court found that the mother failed continuously and repeatedly to remedy her substance abuse problems and that numerous case plan services failed in her assistance. The second factor was also applied only to the mother, as only the mother was shown to have a chronic, severe chemical dependency rendering her unable to provide an adequate home. The factor of R.C. 2151.414(E)(12), that a parent is incarcerated at the time of the hearing, applied only to one of Milyon's sibling's father; the explanations supporting a finding of R.C. 2151.414(E)(16) applied mainly to the mother.
 {¶ 41} The trial court did find the third factor, R.C. 2151.414(E)(4), to apply to appellant, as it found appellant "demonstrated a lack of commitment toward [Milyon] by failing to regularly support, visit, or communicate" with her when able to do so, or "by other actions showing an unwillingness to provide an adequate permanent home" for Milyon.
 {¶ 42} Although the trial court incorrectly stated that appellant stopped visiting in 2004, as appellant, the GAL, and the caseworker all testified that appellant resumed visitation after the instant complaint was filed and while Milyon was in relative care, appellant acknowledged that he failed to engage in case plan services.
 {¶ 43} The court also found R.C. 2151.414 to apply to appellant, finding that he abandoned Milyon because he had not visited or contacted her for several months. A child is presumed abandoned when the parents fail to visit or maintain contact with the child for a period of 90 days, "regardless of whether the parents resume contact with the child after that period * * *." R.C. 2151.011(C).
 {¶ 44} Again, although testimony did establish that appellant may have visited for an unknown number of times after the complaint was filed, no testimony or evidence indicates that appellant visited or cared for Milyon during the time her mother had custody. See discussion regarding abandonment and neglect, supra. While appellant may correctly argue that better records should have been kept as to his visitation or lack thereof, it may be properly inferred from all the testimony that appellant failed to contact or communicate with Milyon during her first stint in LCCSB's temporary custody and while Milyon was in her mother's custody.
 {¶ 45} R.C. 2151.414(E)(14) was also established; the court found that appellant demonstrated an unwillingness to provide food, clothing, shelter, and other basic necessities. Although appellant established paternity, no evidence of a child support order was introduced. Appellant's testimony with respect to providing support for Milyon was sparse and nonspecific; he only asserted that he provided whatever the mother asked him to provide. The trial court could have also considered appellant's failure to participate in case planning; although appellant argues that letters were improperly mailed to him, he was aware of the necessity of engaging in services, and failed to engage. The trial court, unlike the appellate court, renders credibility determinations; based on the lack of evidence of his support and appellant's vague testimony about his support, the trial court properly found this section to apply.
 {¶ 46} When the court finds one of the enumerated statutory factors, it is required to enter a finding that the child cannot be placed with the parent within a reasonable period of time or should not be placed with the parent. The trial court did make sufficient findings, and properly entered a determination that Milyon cannot and should not be placed with appellant.
 {¶ 47} Before granting permanent custody, however, it must be found that a termination of parental rights is in the child's best interests. A court is required to consider all relevant favors, including, but not limited to, the factors enumerated in R.C. 2151.414(D) and R.C.2151.414(E)(7)-(11). Here, the trial court considered Milyon's custodial history, the interaction and interrelationship of Milyon and appellant, Milyon's wishes as expressed through the GAL, and the fact that Milyon is in need of a permanent placement. The record showed that Milyon had been back and forth in her mother's custody, and that appellant had been unwilling or unable to seek or take custody. The court found that appellant and Milyon had not established a parent/child relationship. The GAL expressed that Milyon would want to stay with her sisters, not that she would want to be in appellant's custody. These considerations are sufficient to enter a determination that termination of appellant's parental rights is in Milyon's best interests.
 {¶ 48} Since clear and convincing evidence supports the required statutory findings, the trial court did not err in its decision to terminate appellant's parental rights to Milyon. Appellant's sole assignment of error is not well-taken.
 {¶ 49} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.