[Cite as *In re L.M.*, 2022-Ohio-238.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

    L.M.,

CASE NO. 9-21-17

DEPENDENT CHILD.

O P I N I O N

[JENNIFER F. - APPELLANT]

IN RE:

    S.M.,

CASE NO. 9-21-18

DEPENDENT CHILD.

O P I N I O N

[JENNIFER F. - APPELLANT]

**Appeals from Marion County Common Pleas Court**
**Family Division**
**Trial Court Nos. 18 AB 0081 and 18 AB 0080**

**Judgments Affirmed**

**Date of Decision:   January 31, 2022**

APPEARANCES:

    *Edwin M. Bibler* **for Appellant**

    *Nathan R. Heiser* **for Appellee**

**SHAW, J.**

{¶1} Mother-Appellant, Jennifer F. ("Mother"), appeals the April 28, 2021 judgments of the Marion County Court of Common Pleas, Family Division, granting permanent custody of her two minor children to Appellee, Marion County Children Services ("MCCSB"). Because the trial court did not err in determining permanent custody was in the best interest of the children, we affirm the judgments.

*Background*

{¶2} Mother is the biological mother of S.M., born in December of 2009, and L.M., born in April of 2015.[1] On March 5, 2018, MCCSB filed complaints alleging S.M. to be a dependent child, and L.M. to be an abused and dependent child. Mother has a younger child, born in April of 2016, who was also the subject of a complaint and who was placed in the legal custody of his father after MCCSB's involvement in this case. The complaints alleged that the maternal grandfather smoked marijuana in front of the children, that the home was infested with mice and roaches, and that two of the children had tested positive for cocaine while residing in the home. The complaints requested protective supervision of Mother's children. The trial court appointed a guardian ad litem to represent the children in this case.

{¶3} At an adjudicatory hearing held on May 18, 2018, Mother stipulated that both children were dependent. Following a dispositional hearing, the magistrate

---

[1] The children's biological father is deceased.

ordered that the children shall remain in the legal custody of Mother under protective supervision by MCCSB. The trial court adopted the magistrate's decision. The case plan for Mother included goals for her to ensure that her children were not exposed to drug paraphernalia or drug use, to gain and maintain income, and to obtain and maintain housing for the children. The case plan also required that she complete a mental health assessment and submit to random drug screens. The record indicates the two children continued to test positive for cocaine throughout the first four months of the case, but the Mother did not. Because there was concern that there was cocaine residue in the home, the carpet was removed and portions of the home were repainted. Mother eventually moved from that home to resolve the issue.

{¶4} In early 2019, because of a child endangering charge against Mother stemming from allegations she mistreated her youngest child, MCCSB initiated a safety plan agreed upon by the Mother and placed the children in a kinship placement. Mother later pled to disorderly conduct.

{¶5} On March 20, 2019, MCCSB requested emergency custody of the children and also requested temporary custody because of sexual abuse allegations against an individual living at the safety plan placement. As a result, the trial court magistrate granted interim temporary custody of the children to MCCSB. An amended case plan basically set the same goals for Mother.

{¶6} Over the next year, the trial court held several review hearings, each continuing temporary custody with MCCSB. However, on June 19, 2020, MCCSB filed a motion to modify temporary custody to permanent custody.

{¶7} On August 27, 2020, the guardian ad litem for the children filed a report recommending that permanent custody be granted to MCCSB. The trial court rescheduled a hearing on MCCSB's motion for permanent custody three times, and it eventually took place on March 11, 2021. The guardian ad litem filed a supplemental report prior to that hearing and made the same recommendation.

{¶8} At the permanent custody hearing, MCCSB presented testimony from these individuals: a mental health therapist who had diagnosed and treated Mother, MCCSB's visitation center supervisor, the foster parents, and the ongoing case worker for MCCSB. Mother presented her own testimony and that of Michael P.

{¶9} Following the March hearing, MCCSB filed a motion requesting permission to offer further evidence, essentially rebuttal evidence in response to certain testimony offered by the Mother. An additional evidentiary hearing was held on April 21, 2021. The guardian ad litem filed a second supplemental report prior to the hearing, and also provided cross-examination testimony. By judgment entries filed April 28, 2021, the trial court granted permanent custody of the children to MCCSB. The trial court found that the evidence relating to the best interest

factors in R.C. 2151.414 demonstrated that an award of permanent custody to MCCSB was in the best interest of the children.

**{¶10}** Mother now appeals, raising the following assignment of error for review:

> **THE TRIAL COURT'S JUDGMENT IN GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW, AND AMOUNTED TO AN ABUSE OF DISCRETION, AS GRANTING M.C.C.S.B.'S MOTION FOR PERMANENT CUSTODY WAS NOT IN THE BEST INTEREST OF S.M. AND/OR L.M.**

**{¶11}** In her assignment of error, Mother argues that the trial court's decision to grant MCCSB permanent custody of her two children was against the manifest weight of the evidence, contrary to law and an abuse of discretion. Specifically, Mother challenges the grant of permanent custody on the ground that it was not in the children's best interest.

*Permanent Custody Standards and Procedures*

**{¶12}** When reviewing a grant of permanent custody, we note that "the right to raise one's child is a basic and essential right." *In re X.S.*, 3d Dist. Mercer Nos. 10-20-09, 10-20-10, 10-20-11, 10-20-12 and 10-20-13, 2021-Ohio-1774, ¶ 21 (citations omitted). Nevertheless, the rights and interests of a natural parent are not absolute. *Id.* citing *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. "R.C. 2151.414 outlines the procedures that protect the interests of parents and children in a permanent custody proceeding." *In re N.R.S.*, 3d Dist. Crawford Nos.

3-17-07, 3-17-08 and 3-17-09, 2018-Ohio-125, ¶ 12, citing *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26.

{¶13} Pursuant to R.C. 2151.414(B), a trial court is authorized to grant permanent custody of a child to a children services agency if the court finds, by clear and convincing evidence, that: (1) any of the circumstances in R.C. 2151.414(B)(1)(a) to (e) applies; and (2) permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re X.S.* at ¶ 22. R.C. 2151.414(B)(1)(d) provides, in pertinent part, that the trial court may grant custody of a child to MCCSB if the court determines that the child had been in the agency's temporary custody for twelve or more months of a consecutive twenty-two-month period.

{¶14} "When determining whether permanent custody is in the best interest of the child, the trial court must consider the factors listed in R.C. 2151.414(D)(1), as well as all other relevant factors." *In re X.S.* at ¶ 22, citing *In re N.R.S.* at ¶ 15. The best interest factors include:

> **(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**
>
> **(b) The wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**

> **(c)   The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;**
>
> **(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**
>
> **(e)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

R.C. 2151.414(D)(1).

{**¶15**} The trial court's best-interest finding must be supported by clear and convincing evidence presented to it.  R.C. 2151.414(B)(1); *In re N.R.S.* at ¶ 16. Clear and convincing evidence is evidence that " 'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re C.H.*, 3d Dist. Mercer Nos. 10-19-10, 10-19-11, 10-19-12 and 10-19-13, 2020-Ohio-716, ¶ 61, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954).

{**¶16**} Moreover, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact.  *In re C.H.* at ¶ 62. "Deferring to the trial court on matters of credibility is 'crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does *not* translate to the record well.' "   (Emphasis sic)   *Id.* citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1977).

**{¶17}** Furthermore, when an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20 (citations omitted); *accord In re C.H.* at ¶ 64. Thus, a trial court's decision on terminating parental rights "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re N.R.S.* at ¶ 16, citing *In re Miajanigue W.*, 6th Dist. Lucas No. L-06-1088, 2006-Ohio-6295, ¶38, citing *In re Forest S.*, 102 Ohio App.3d 338, 344-345, *Cross v. Ledford*, 161 Ohio St. 469, paragraph three of the syllabus.

*Best Interest*

**{¶18}** R.C. 2151.414(D)(1) requires the trial court to consider the totality of the circumstances when making its best interest determinations and no single factor is given greater weight than others by the statute. *In re N.R.S.* at ¶ 16, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56 (2006). Here, the trial court

expressly considered each of the best interest factors enumerated in R.C. 2151.414(D)(1), and determined by clear and convincing evidence that it was in the children's best interest that permanent custody be awarded to MCCSB. The trial court also determined that the children had been in the temporary custody of MCCSB for more than twelve of the last twenty-two months. Mother does not dispute the trial court's finding pursuant to R.C. 2151.414(B)(1)(d) for the requisite period of time. The record supports that finding. Mother has challenged only the trial court's determination than an award of permanent custody to MCCSB was in the children's best interest.

*Child's Interactions and Interrelationships*

{¶19} The first best interest factor requires consideration of the children's personal interactions and relationships. *See* R.C. 2151.414(D)(1). In this appeal, Mother has pointed to evidence in the record of the children's bond with her. The trial court recognized this evidence when it concluded that Mother shared a bond with the children. At the same time, however, there was evidence before the trial court that the children had been placed with a foster family for two years and that they have developed a bond with the family. According to both the MCCSB caseworker and the guardian ad litem, the children are well adjusted and happy in their foster placement. Both foster parents stated the children are well integrated into the family's home life and get along great with their three children. The record

also shows MCCSB facilitated visitation with Mother, the children, and their younger sibling who is in the legal custody of his father.

{¶20} If permanent custody were to be awarded to MCCSB, both foster parents are willing to adopt the children. The trial court further noted that the foster parents are willing to allow contact with Mother in the future if they believe the contact would be in the children's best interest and that it would be their intent to continue the children's relationship with their younger sibling.

{¶21} Additionally, the trial court noted the interaction between Mother and the children has been troubling on several occasions. In particular, according to the foster parents and the MCCSB caseworker, S.M. assumes the maternal role. The record indicates that this has been observed during visitation with Mother. The Mother acknowledged this fact, stating, "[S.M.] always thought she had to be the mother bird." (Mar. 11, 2021 Tr. at 294). The foster parents additionally explained that when S.M. first arrived in their home, she acted very much like she had to assume the maternal role, and that it took time for her to behave more like a child her age. They related that S.M. has attended counseling consistently while in their care, and they believe it has helped. Thus, the trial court noted that S.M. is now in a situation where she does not need to take on the maternal role.

{¶22} On another occasion, April 14, 2021, during visitation, Mother discussed the foster parents in a negative way with the children, which caused a

supervisor to intervene and ask her to stop. Mother reacted angrily, and two supervisors attempted to calm her. When they were unable to calm her, the visit was terminated. Mother admitted that this visit had been terminated early because she was yelling and upset about the foster parents. According to the ongoing MCCSB caseworker, Mother was consistent with her visits with the children, but was unable to progress past supervised visitation.

*Child's Wishes*

{¶23} As to the second best interest factor, regarding the children's wishes, the guardian ad litem reported that S.M. has been unable to choose between living with her Mother or her foster parents and that L.M. wanted to return to live with her Mother. As the trial court noted, however, L.M. had just turned six (6) years old at the time of the April hearing. The trial court noted that "L.M.'s position is changeable, and she sometimes wants to stay with the [foster parents]." (Apr. 28, 2021 J.E. at p. 18). In this regard, the trial court found that L.M. "is negatively impacted by her interaction with [Mother], as evidenced by her behavior at [daycare] the day following visits." *Id.*

{¶24} Further, the children's guardian ad litem had given her opinion that granting MCCSB's motion for permanent custody was in the best interest of both children.

*Custodial History*

**{¶25}** Third, the custodial history of the children reflects MCCSB obtained temporary custody in March 2019 and placed them in a foster home where they have remained for a period of over two years.

*Legally Secure Permanent Placement*

**{¶26}** Regarding the fourth best interest factor, Mother has contended that the best interest of the children would be served by the trial court allowing her more time to continue working on the case plan goals, emphasizing the improvements she has made toward the end of the case, her current employment, the fact that she had obtained appropriate housing, and her bond with the children.

**{¶27}** While the trial court recognized, and the evidence indicates, that Mother found appropriate housing in January 2021 and that she has maintained employment at McDonald's for eighteen (18) months, it also stated that "[a] legally secure placement cannot be accomplished without a grant of permanent custody to MCCSB." (Apr. 28, 2021 J.E. at p. 19). Notably, the trial court also stated that Mother was unable to secure appropriate housing from the beginning of the case in March 2018 until January 2021. The trial court also found that Mother moved ten (10) times during the pendency of this case.

**{¶28}** A legally secure permanent placement "is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live

in safety with one or more dependable adults who will provide for the child's needs." *In re B.F.*, 3d Dist. Paulding No. 11-21-04, 2021-Ohio-4251, ¶ 57, quoting *In re K.M.*, 3d Dist. Crawford Nos. 3-18-11 and 3-18-12, 2018-Ohio-3711, ¶ 29, quoting *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56; *see also In re K.M.*, 10th Dist. Franklin Nos. 15AP64 and 15AP-66, 2015-Ohio-4682, ¶ 28 (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs). Although Mother's physical home was appropriate, the trial court noted:

> **Michael P[.] is on the lease for [Mother's] Mound Street residence, and whether he lives there or not, he is often there. He admits that he is a "pothead" and [Mother] has repeatedly tested positive for THC since [Michael] was released from prison and reentered [Mother's] life.**

(Apr. 28, 2021 J.E. at p. 19).

{¶29} Additionally, the trial court shared MCCSB's concerns about Mother's judgment as to Michael P. The ongoing caseworker and the guardian ad litem both expressed concerns about Mother continuing to maintain a romantic relationship with someone who has a history of domestic violence. Michael P. was previously in prison for domestic violence and has violated protection orders on more than one occasion. When Mother was questioned at the permanent custody hearing about appearing at a visit with the children in January 2021 with a noticeably blackened eye, she stated that her black eye did not come from Michael P., but rather

indicated that her cousin, Luke, had given her the black eye when they fought after she told him to leave because she found he had drugs. Mother also indicated there would be a police report regarding the incident. Michael P. denied giving Mother a black eye in January 2021.

{¶30} Here, the trial court specifically found Mother's testimony asserting that Michael P. never struck her not credible. There was evidence before the trial court that Mother had told her mental health therapist about her boyfriend, Michael, assaulting her in the summer of 2020, and that they remained together. There was also evidence before the trial court that Mother had reportedly disclosed at the January 2021 visit "that her boyfriend hit her, that she responded by hitting him with a baseball bat, and that she called his mother to pick him up and take all of his things from the house." (Apr. 28, 2021 J.E. at p. 6). Mother agreed that she had told the MCCSB worker about retaliating with a baseball bat, but stated her previous story was not true. Later testimony of the guardian ad litem indicated, in fact, that there was nothing substantiating Mother's version of how she received the black eye in January 2021. The guardian ad litem's recommendation continued to be for the trial court to grant MCCSB permanent custody.

{¶31} The trial court also considered testimony about another incident, which occurred on February 8, 2021, in which the Marion Police Department was dispatched to Mother's residence. As summarized by the trial court:

> **[Mother] testified that a neighbor called because there was screaming at Mother's home. She said that Michael P[.] had been there, that she and [Michael] had been fighting over a text he received from a former girlfriend, and that he left at about 10:30 p.m. After he left, she was alone in the home and screaming for help because she was off her medication. She said she threw a coffee cup and it shattered, and that she cut her cheek while cleaning up the shattered cup.**

(Apr. 28, 2021 J.E. at p. 19).

{¶32} Thus, with regard to Mother's home environment, the trial court found, as Mother is pregnant with Michael P.'s child, that it seems likely that he will continue to be involved in Mother's life. Mother's home environment also remains one in which drug use and paraphernalia are likely present, as indicated above.

{¶33} Moreover, we again note that the evidence showed that the children are doing well in their current foster home and are bonded with their foster family. The foster family provides the children with a safe environment where the children are not at risk of being exposed to drug use or domestically violent behavior. The foster parents plan to adopt both children. The guardian ad litem also expressed her continued belief that permanent custody was in the best interest of the children.

{¶34} For all of the foregoing reasons, we disagree with Mother that the trial court should have given her more time to complete all of the case plan goals.

*Applicability of R.C. 2151.414(E)(7)-(11) Factors*

{¶35} There were no factors listed in R.C. 2151.414(E)(7)-(11) applicable to this case.

*Conclusion*

{¶36} Our review reflects that in the case of each child, the trial court made the appropriate considerations and found by clear and convincing evidence that it is in the children's best interest to be placed in the permanent custody of MCCSB. Moreover, in light of the clear and convincing evidence that supports the trial court's conclusion that the award of permanent custody to MCCSB is in the children's best interest, the trial court's decision is not against the manifest weight of the evidence. Accordingly, Mother's sole assignment of error is overruled.

{¶37} Having found no error prejudicial to the Appellant-Mother herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/jlr**